**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **COLE WILLIAMS AND NOVACK** | | |
| **LAZARE, individually** | ) | |
| **and on behalf of all others similarly** | ) | **CIVIL ACTION NO:** |
| **situated,** | ) | |
| **Plaintiff,** | ) | **3:14-cv-01429-VLB** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GENERAL NUTRITION CENTERS, INC.** | ) | |
| **AND GENERAL NUTRITION CORP.,** | ) | **November 15, 2018** |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION TO APPROVE CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION**

Cole Williams and Novack Lazare ("Named Plaintiffs"), by and through their undersigned counsel, hereby file their unopposed motion for final approval of a proposed Agreement ("Settlement Agreement") to resolve the claims asserted in this lawsuit on their behalf and on behalf of a class of similarly situated employees under the Connecticut Wage Act ("CWA"). The Settlement Agreement is attached hereto as Exhibit 1.

The Court should approve the proposed Settlement Agreement (Exh. 1) because it is the result of arms' length negotiations, and it is "a fair and reasonable resolution of a *bona fide* dispute" involving claims for unpaid overtime wages under the Connecticut Wage Act.  Furthermore, the class has now been notified of the settlement in accordance with the procedures set forth in the Settlement Agreement and ordered by this Court.  As of the filing of this motion, no class member has objected or opted out.

Accordingly, the Parties respectfully request that this Court enter the attached proposed order approving the settlement and dismissing the action with prejudice

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are set forth in the Plaintiffs' motion for preliminary approval and are incorporated herein by reference.

On August 6, 2018, Plaintiffs filed an unopposed motion for preliminary approval of the proposed settlement.  Docket no. 78.  A telephonic hearing was held on that motion on August 29, 2018.

On September 21, 2018, the Court entered an order granting Plaintiffs' motion for preliminary approval.  Docket no. 81.  The Court ordered that notice be mailed to the class by October 5, 2018, that the Settlement Class members have 30 days to exclude themselves or object to the settlement and that the parties file with the court a report of the results of the class notification by November 19, 2018. Docket nos. 81, 82, 83.

On October 5, 2018, the notice was mailed to the class by the Settlement Administrator as ordered by the Court.  (*See* Exh. 2, Simpluris Decl.)  As of the final report from Simpluris, no member of the class had objected, and no member of the class had opted out of the settlement.

As of the filing of this motion, Class Counsel has not been contacted by any member of the class.  Class counsel has not received any communication by any member of the class expressing an interest to opt out of the settlement or objecting to it in any way.

### III.   OVERVIEW OF THE SETTLEMENT AGREEMENT

The terms fully set forth in the Settlement Agreement are summarized as follows:

1)   **Type of Settlement: Connecticut Wage Act settlement, for unpaid overtime wages.**

2)   **Settlement Amount: $95,000 for the class, $15,000 in incentive awards for the named plaintiffs, attorneys' fees and costs to be submitted to the Court.**

3)   **Putative Class: All individuals employed by Defendants at any time from September 29, 2012 to July 5, 2014 as full-time salaried store managers and/or assistant store managers.**

4)   **Administration: The Parties have chosen third-party Class Action Administrator, Simpluris, Inc. whose fees will be paid separately by Defendants.**

5)   **Notice Plan:  Within seven (7) days after preliminary approval, Defendants will provide the administrator with a class list.  The administrator shall mail notice to the class within seven (7) days of receipt.  The class will have 30 days to opt out of the settlement.**

6)   **Notice and Opt-Out Period: 30 days.**

7)   **Attorneys' fees and costs: to be submitted to the court for determination and award.**

8)   **Service Payment or Incentive Award: $15,000 to Named Plaintiff to be paid from the Maximum Gross Settlement Amount, if approved by the Court.**

9)   **Formula for Share Calculation: Pro rata in accordance with hours worked and compensation earned in the class period, with an adjustment to provide a minimum recovery per class member.**

10)  **Release: As discussed in detail in the Settlement Agreement, all Participating Plaintiffs (other than the Named Plaintiff, who will issue**

a general release) will release any claims for the payment of overtime, calculation of overtime or the regular rate of pay, use of the FWW method, and other claims related to the nonpayment or underpayment of wages under federal, state, local or common laws which were asserted or could have been asserted in the Lawsuit.

11) **Final Approval:** There will be a Final Approval hearing at least 100 days following the filing of this motion.

12) **Effective Date:** Thirty-Five (35) days after final approval.

13) **Distribution Plan:** Within seven (7) days of the Effective Date, the Settlement Administrator shall pay the class and the named plaintiffs.

## IV.   LEGAL STANDARD

A district court may approve a proposed wage class action settlement if it determines that the compromise reached "is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores v. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Dixon v. Zabka*, 2013 U.S. Dist. LEXIS 77715, at *5 (D. Conn. May 23, 2013) ("If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.") (citing *Aros v. United Rentals, Inc.*, 2012 U.S. Dist. LEXIS 104429 (D. Conn. July 26, 2012)).

A settlement's fairness is determined by looking at both the settlement's terms and the negotiating process leading to settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted). "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir.

2005) (citing Manual for Complex Litigation, Third, § 30.42 (1995)); *see also Maced. Church v. Lancaster Hotel, LP*, 2011 U.S. Dist. LEXIS 62063, at *26 (D. Conn. June 9, 2011) (there is a "strong presumption" in finding a settlement fair if it has been negotiated at arms-length). Further, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Visa U.S.A. Inc*., 396 F.3d at 116-117 (citation omitted). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id*. (citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:41, at 87 (4th ed. 2002)).

V.    ARGUMENT

    A. This Court should finally approve the proposed settlement because there is a *bona fide* dispute.

"The first step in analyzing the settlement agreement is determining whether there are FLSA issues that are 'actually in dispute.'" *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248, at *4 (D. Md. Jan. 29, 2015).

There is little question that this case involved a "*bona fide*" dispute.  The parties fought vigorously for almost four years over the meaning of the applicable Connecticut regulation and did not settle the case until long after the Connecticut Supreme Court determined its meaning as a matter of law.

    B. The proposed settlement is fair and reasonable.

First, the Settlement Agreement is entitled to a presumption that it is fair and reasonable because it is the result of arms-length negotiations. *See, e.g., Maced. Church*, 2011 U.S. Dist. LEXIS 62063, at *26 (courts note that there is a "strong presumption" in finding a settlement fair if it has been negotiated at arms-length.).

Here, the Parties reached the Settlement Agreement after settlement discussions which began early in the litigation when the case was stayed and which continued after the Connecticut Supreme Court's ruling in 2017.  Then, they participated in a settlement conference presided over by Magistrate Judge William Garfinkel.

Furthermore, both the Named Plaintiffs and Defendants were represented during the negotiations by legal counsel experienced in employment matters. Under these circumstances, including an arms' length negotiation assisted by a mediator, the strong presumption of fairness and reasonableness of the Settlement Agreement applies.  *See Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at \*14 (S.D.N.Y. June 7, 2011) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.").

Second, the recovery for the Named Plaintiff and other class members is fair and reasonable. In their agreement, the parties have acknowledged that the amount of the settlement for the class is the amount that they would receive under the formula set forth by the Connecticut Supreme Court in its initial ruling, plus substantial interest payments.  The class would only be eligible to receive more if they proved that Defendants acted in bad faith (and there was evidence that they consulted with counsel before deciding to calculate the class's overtime calculations consistent with federal law), or if they were able to prove at trial that their weekly salary was intended to compensate them for only 40 hours, not whatever hours they worked.  This last condition was the condition that the

Connecticut Supreme Court added to its footnote 11 after considering Plaintiffs' motion for reconsideration.  Both contingencies are unlikely, and so Plaintiffs and the class are receiving approximately 100% of what their likely result at trial would be.

The parties reasonably believe that, if the Settlement Agreement is not approved, this case will require contentious litigation and substantial expense to complete. The Named Plaintiffs will refile their Motion for Class Certification, which Defendants will oppose.  If successful, they would then file a motion for summary judgment, which Defendants would oppose.  There could be a trial on the merits in this case, and if not, there would certainly be a hearing in damages.

Third, the Settlement Agreement is reasonable because the releases contemplated by the proposed settlement are limited to unpaid overtime and wages claims, and are not overly broad. This also supports a finding that the settlement is fair and reasonable.  *See Cheeks v. Freeport Pancake*, 796 F.3d 199, 206 (2015). In cases such as these, it is common for a settlement to release only those wage and hour claims brought before the court. *See Davis v. J.P. Morgan Chase*, 827 F. Supp. 2d 172, 180-81 (W.D.N.Y. 2011). Moreover, if any putative FLSA collective members who have not already opted into this action are not satisfied with what they will be paid as a result of the Settlement Agreement, they have the option of declining the payment and pursuing a new legal action against Defendant.

Fourth, the settlement agreement is reasonable because it does not contain the type of onerous non-monetary terms that the Second Circuit pointed out as objectionable in *Cheeks*. *See Cheeks*, 796 F.3d at 206.

7

Although Named Plaintiffs' Counsel believe that both the material facts and relevant law support their claims for additional sums for the class, they recognize the uncertainty of the outcome of this litigation, the defenses that will be asserted, and the anticipated duration and expense of litigation of this case through discovery, pre-trial motions, trial, and any appeals. When the terms of the proposed settlement, which will confer immediate benefits upon the participating putative FLSA collective members, are considered within a "risk/reward" analytical framework, the Named Plaintiffs and his Counsel believe that the proposed Settlement Agreement is demonstrably fair, adequate and reasonable, and should therefore be approved by this Court.

   C.  **The proposed service payments for Named Plaintiffs are reasonable.**[1]

Under the Settlement Agreement and subject to Court approval, the Named Plaintiffs will receive a service payments or incentive awards in the amount of $7,500 each. The Named Plaintiffs and their Counsel believe that such a payment is reasonable for being the only two representatives of the class and making the proposed settlement available for other managers and assistant managers through their efforts, attending the settlement conference, and generally assisting Named Plaintiffs' Counsel in prosecuting the case, and to compensate the Named Plaintiffs for taking on the inconvenience and stigma of filing suit on behalf of the putative FLSA collective.

---

[1]  This section of the memorandum is presented solely by the Named Plaintiffs. Defendants do not join in this section of the memorandum but do not oppose Plaintiffs' request for the proposed service payments.

Courts in the Second Circuit routinely approve incentive payments in class action settlements as a way of compensating representatives for lending their names, reputations, and efforts to the prosecution of litigation on behalf of others, and to promote class settlements while encouraging plaintiffs to act as "private attorneys general" in the enforcement of state and federal law. *See, e.g., Aros*, 2012 U.S. Dist. LEXIS 104429, at *8 ("Named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.") (*citing, e.g.*, *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred  by named plaintiffs and compensating them for their additional efforts.")); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."); *see also Sheppard v. Consol. Edison Co. of New York, Inc.*, 2002 U.S. Dist. LEXIS 16314, at *19-20 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve incentive payments in the range of the one requested in this case, and in even higher amounts.  *See, e.g., Kiefer, et. al., v. Moran Foods, LLC, et. al.*, No. 12-CV-756 (D. Conn. Aug. 5, 2014) (ECF No. 328) (granting final settlement approval, awarding incentive payment to main named plaintiff of $30,000, and to two named plaintiffs of $10,000 each); *Willix v.*

*Healthfirst, Inc*., 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) **(approving service awards of $30,000, $15,000, and $7,500)**; *Duchene v. Michael Cetta, Inc.,* **2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) (approving an award of $25,000);** *Sewell v. Bovis Lend Lease LMB, Inc*., **2012 U.S. Dist. LEXIS 53556, at \*40 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000);** *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C*., **2010 U.S. Dist. LEXIS 12762, at \*5 (S.D.N.Y. Feb. 9, 2010) (finding individual incentive awards ranging up to $15,000 to be appropriate);** *Reyes v. Altamarea Grp., LLC*, **2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000);** *Khait v. Whirlpool Corp*., **2010 U.S. Dist. LEXIS 4067, at \*26 (E.D.N.Y. Jan. 20, 2010) (approving awards of $15,000 and $10,000 to named plaintiffs);** *Yap v. Sumintomo Corp. of America*, **1991 WL 29112, at \*9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative Plaintiff).**

**The incentive payment proposed here is in the middle range of such awards and is thus reasonable. Moreover, an incentive payment for the Named Plaintiffs is justified because "an employee fearful of retaliation or of being 'blackballed' in his or her industry may choose not to assert his or her [unpaid wages] rights."** *Salim Shahriar v. Smith & Wollensky Rest. Group, Inc*., **659 F.3d 234, 244 (2d Cir. 2011) (citation omitted). Further, Named Plaintiffs here hired Lead Counsel, met with Lead Counsel on multiple occasions, responded to Defendants' discovery requests, attended the full-day mediation, met with Lead Counsel multiple times during the many months the negotiations lasted, and communicated via email and telephone**

many times with Lead Counsel during the roughly four-year period the litigation lasted.

### D.   The proposed attorneys' fees procedure is reasonable.

Here, the parties were not able to reach agreement on an amount of attorneys' fee and costs as part of the settlement.  They did agree that Plaintiffs' counsel would submit a motion for approval of fees and costs to the court.  That motion will be filed separately.

## VI.   CONCLUSION

As discussed above, the proposed settlement resolves *bona fide* disputes over unpaid wages under the FLSA. Further, the proposed settlement is fair and reasonable as it is the product of arms-length negotiations between experienced legal counsel achieved with the assistance of a highly-respected Magistrate Judge after a one-day mediation and a period of months of negotiations. Moreover, the proposed settlement achieves immediate recovery for individuals who choose to accept their share, while allowing any individuals who may choose to pursue their individual claims to do so.  Finally, no member of the class has objected or opted out.

Accordingly, this Court should approve the Settlement Agreement.   The Parties respectfully request that this Court enter as an Order of the Court negotiated proposed final order attached to the Motion.

RESPECTFULLY SUBMITTED,
THE PLAINTIFFS

By: ___ */s/ Joshua R. Goodbaum* ___
      Stephen J. Fitzgerald (ct22939)
      Joshua R. Goodbaum (ct28834)
      GARRISON, LEVIN-EPSTEIN,
         FITZGERALD & PIRROTTI, P.C.
      405 Orange Street
      New Haven, CT  06511
      Tel.:   (203) 777-4425
      Fax:   (203) 776-3965
      SFitzgerald@garrisonlaw.com
      JGoodbaum@garrisonlaw.com

      Richard E. Hayber (ct11629)
      HAYBER LAW FIRM, LLC
      221 Main Street, Suite 502
      Hartford, CT 06106
      Tel.:   (860) 522-8888
      Fax:   (860) 218-9555
      RHayber@hayberlawfirm.com

      *Attorneys for the Plaintiffs*

**12**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the above-stated date a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

*/s/ Joshua R. Goodbaum*
**Joshua R. Goodbaum**